IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PATRICIA ANN YATES, as the  :
Administratrix of the Estate of
FRANK LEE YATES, JR.,       :
deceased,

                       :

     Plaintiff,

                       :

vs.                             CA 08-0337-KD-C

                       :

MEDTRONIC, INC., et al.,

                       :

     Defendants.

## <u>REPORT AND RECOMMENDATION</u>

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the removal petition, as amended (Docs. 1 & 22), plaintiff's motion to remand (Doc. 8; *see also* Doc. 20), the motion to remand filed by defendants Stephanie D. Grosz, M.D., Scott D. Kirby, M.D., and Cardiology Associates of Mobile, Inc. (Doc. 13; *see also* Doc. 27 (brief in support of motion to remand)), and the Guidant defendants' opposition to the remand motions (Doc. 41). Upon consideration of the foregoing pleadings, with attachments, it is recommended that the Court **GRANT** the motions to remand and **REMAND** this case to the Circuit Court

of Mobile County, Alabama from whence it came.

## FINDINGS OF FACT

1.      On May 5, 2008, plaintiff filed a combined products liability and medical malpractice action in the Circuit Court of Mobile County, Alabama against Medtronic, Inc., Medtronic USA, Inc., Boston Scientific Corporation, Guidant Corporation, Guidant Sales Corporation, Cardiac Pacemakers, Inc., Claude W. Passeau, Spectranetics Corporation, Claude LaFont, Cardiology Associates of Mobile, Inc., Stephanie D. Grosz, M.D., Scott D. Kirby, M.D., and numerous fictitious parties. (Doc. 1, COMPLAINT) The complaint avers that Frank Lee Yates, Jr. wrongfully died on May 9, 2006 "as a direct result of the malfunction of and the defects within the [Guidant Ventak prizm DR] ICD [Model Number 1851], the malfunction of and the defects within the ICD leads,[1] and the complications relative to the attempts to perform a laser extraction procedure of the same." (Doc. 1, COMPLAINT, at ¶ 32 (footnote added)) The complaint sets forth numerous causes of action, each of which seeks indeterminate damages. (*See id*. at ¶¶ 36, 39, 42, 45, 48, 51, 54, 57, 59 & 62)

2.      The complaint establishes that plaintiff is a citizen of Alabama

---

[1]      The leads at issue are the Guidant right ventricular lead Model Number 0147 and the Medtronic right atrial lead Model Number 6490. (Doc. 1, COMPLAINT, at ¶¶ 18-20)

as are defendants Passeau, Grosz, Kirby, and Cardiology Associates of Mobile, Inc. (*Id.* at ¶¶ 1, 9 & 12-14)

3.       While the case was pending in the Circuit Court of Mobile County, defendants Grosz, Kirby and Cardiology Associates of Mobile, Inc. filed a motion to dismiss, or in the alternative a motion for a more definite statement. (Doc. 27, Exhibit 2) This motion was filed on May 30, 2008 (*id.*) and denied by the trial court on June 4, 2008 (Doc. 27, Exhibit 3 ("MOTION TO DISMISS PURSUANT TO RULE 12(B) filed by CARDIOLOGY ASSOCIATES OF MOB, GROSZ STEPHANIE D, MD and KIRBY SCOTT D, MD is hereby DENIED.")).

4.       The Guidant defendants, more specifically, Guidant Corporation Guidant Sales Corporation, Boston Scientific Corporation, and Cardiac Pacemakers, Inc., removed the action to this Court on June 13, 2008. (Doc. 1)[2] The removal petition avers that removal is proper based on diversity of citizenship. (Doc. 1, at ¶ 4 ("Removal under section 1441 is appropriate in that there exists complete diversity of citizenship between Plaintiff and all *properly joined* Defendants in the underlying cause, and the amount in controversy exceeds $75,000, exclusive of interest and costs.") (emphasis in original))

_____

[2]       Named defendants Medtronic, Inc., Medtronic USA, Inc., Spectranetics Corporation, and Claude Lafont specifically consented to the removal. (Doc. 1, Exhibit F)

14.     Claude W. Passeau (the "Sales Representative") is a citizen of Alabama. Additionally, Cardiology Assoicates of Mobile, Inc., Stephanie D. Grosz, M.D., and Scott D. Kirby, M.D. (the "Healthcare Defendants") are citizens of Alabama. The fact that there is a lack of complete diversity on the face of the Complaint is, however, irrelevant for removal purposes. *See Legg v. Wyeth*, 428 F.3d 1317, 1321 (11th Cir. 2005).

15.     [28] U.S.C. § 1441(b) states that suits that do not arise under federal law are removable "if none of the parties in interest *properly* joined and served as Defendants is a citizen of the State in which such action is brought." (emphasis added).

16.     The Sales Representative and the Healthcare Defendants have not been properly joined. Their inclusion in this action is for the sole purpose of preventing the Guidant Defendants from exercising their right to remove this case to federal court. Accordingly, their non-diverse status is irrelevant for the purposes of removal analysis.

17.     It is well-settled law that "diversity jurisdiction 'cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *3 (M.D. Ala. Dec. 19, 2005) (*quoting Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921)). Removal of this suit pursuant to complete diversity of citizenship should not be thwarted by Plaintiff's attempt to join the Sales Representative and the Healthcare Defendants improperly in order to destroy diversity. As the Supreme Court has stated, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court . . . ." *Wecker v. Nat'l Enameling & Stamping Co.,* 204 U.S. 176, 186 (1907).

.        .        .

4

20.   .  .  .  [T]he claims against the Healthcare Defendants have been fraudulently misjoined with the claims against the Guidant Defendants because there is no real connection between the claims against the two. Given that the requirements for joinder under Fed.R.Civ.P. 20 have not been met, the claims against the Healthcare Defendants should be severed from those against the Guidant Defendants.

.      .      .

26.   Plaintiff has [] improperly joined the medical negligence claims asserted against the Healthcare Defendants with the product liability claims asserted against the Guidant Defendants. Therefore, the Healthcare Defendants' citizenship must be ignored for the purposes of determining the propriety of removal. *See, e.g., Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1359-1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000).

27.   Fed.R.Civ.P. 20(a) limits permissive joinder of parties to "claims arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all to all these persons will arise in the action." To that end, "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Tapscott*, 77 F.3d at 1360.

28.   Here, Plaintiff's medical negligence claims against the Healthcare Defendants do not arise out of the same transaction or occurrence or series of transactions or occurrences as the claims against the Guidant Defendants. The claims are legally and factually distinct.

29.   Significantly, Plaintiff separates her medical malpractice claims against the Healthcare Defendants from the product liability claims against the Guidant Defendants. *See* Complaint at ¶ 59.

30. The crux of Plaintiff's claims against the Healthcare Defendants arise from the treatment given Frank Yates as a patient of the Healthcare Defendants. In contrast, Plaintiff's claims against the Guidant Defendants involve the design, testing, manufacturing, and sale of Plaintiff's cardiac medical devices.

31. The evidence in support of these distinct claims will necessarily be different. On one hand, Plaintiff will have to establish that the Guidant Defendants manufactured, designed, and/or sold defective cardiac devices. On the other hand, Plaintiff will have to establish that the Healthcare Defendants breached a standard of care that Healthcare Defendants owed to Frank Yates in treating him as a patient. Significantly, the *only* allegation against the Healthcare Defendants that even mentions the Guidant Defendants' product is that the Healthcare Defendants "negligently attempt[ed] to remove the Guidant . . . ICD leads . . . ."*See* Complaint at ¶ 59.B. In short, it appears that the claims will not require *any* of the same proof.

32. Indeed, in this very litigation, the MDL Court, under similar circumstances, has found that medical negligence claims against healthcare providers were improperly joined with the product liability claims against Guidant. In *Alexander v. Guidant Corp.*, the MDL Court found "[t]he joinder of the malpractice claim against [the healthcare provider] with the other product liability claims was inappropriate because the claims do not both involve common questions of law or fact and assert joint, several or alternative liability arising out of the same transaction, occurrence, or series of transactions or occurrences. . . . Any liability that may be found against either [Guidant or the healthcare facility] would not be a basis for liability as to the other." . . .

33. Where the claims against one defendant are "wholly distinct" from the claims against the other defendant and the non-diverse defendant has "no real connection with the controversy" involving the diverse defendant, the requirements

for joinder under Rule 20 have not been met. *See Tapscott*, 77 F.3d at 1360.

34.    By tacking the claims against the Healthcare Defendants onto her Complaint against the Guidant Defendants, Plaintiff is attempting to rely on the unrelated claims against the Healthcare Defendants to evade federal jurisdiction. This Court should not permit Plaintiff to prevail on such an attempt to manipulate the removal statute. Where, as here, a plaintiff attempts to combine two completely unrelated claims in order to avoid federal jurisdiction, this "attempt to join these parties is so egregious as to constitute fraudulent joinder." *Tapscott,* 77 F.3d at 1360. "A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" . . .

35.    Courts may sever improperly joined parties when their claims do not arise out of the same transaction or occurrence, or the claims will not involve questions of law or fact common to all parties. Federal Rule of Civil Procedure 21 provides that "[p]arties may be dropped or added by order of the court . . . at any stage of the action and on such terms that are just."

36.    Since Plaintiff's claims arising out of the healthcare provider's care and treatment of Frank Yates do not arise out of the same "transaction or occurrence" as her claims against the Guidant Defendants, those claims should be severed. As noted by the MDL Court in *Alexander* and in *Brown*, severance will "preserve [the Guidant entities'] right to removal in the remaining action and [will] preserve the interest of judicial expediency and justice." *See* Exhibit D, p. 14, and Exhibit E, p. 7.

37.    The Guidant Defendants therefore specifically request that this Court sever the medical negligence claims against the Healthcare Defendants from the product liability claims against the Guidant Defendants and retain jurisdiction

over the claims against the Guidant Defendants.

## Amount in Controversy Requirement is Satisfied

38.   A district court may consider whether [the] jurisdictional amount is "facially apparent" from the complaint. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). A court may also consider the removal notice and post-removal evidence concerning the amount in controversy. *See id.*

39.   Based on Plaintiff's allegations, the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. Indeed, Plaintiff claims that Frank Yates' death was proximately caused by the defendants. []

40.   Alleged injuries less serious than death have been found to satisfy the amount in controversy requirement. *See Gebbia v. Wal-Mart Stores,* 233 F.3d 880, 888 (5th Cir. 2000) (alleged damages in a slip and fall case for "medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement" met the jurisdictional amount) . . . .

41.   As set forth above, there are currently more than 2040 cases in the *In re Guidant Corp. Implantable Defibrillators Liability Litigation*, MDL-1708. These claims are similar to the claims in this case, e.g., that cardiac devices manufactured by the Guidant Defendants caused personal injury to plaintiffs implanted with these devices. Many of these cases were originally filed in state courts and removed to federal court, and many claimed unspecified damages.

42.   Moreover, products liability claims in Alabama routinely result in verdicts in excess of $75,000 exclusive of interest and costs. *See Toole v. McClintock*, 999 F.2d 1430 (11th Cir. 1993) (addressing on appeal an award of $400,000 in compensatory damages and $5,000,000 in punitive damages in

a medical product liability case); *Benford v. Richard's Medical Co.,* 792 F.2d 1537 (11th Cir. 1986) (discussing an award of $165,000 in compensatory and $100,000 in punitive damages in a medical product liability case). In sum, there is no question that the amount in controversy exceeds $75,000, exclusive of interest and costs.

(Doc. 1, ¶¶ 14-17, 19-20 & 26-42 (emphasis in original; internal footnotes omitted))

5.     Plaintiff filed a motion to remand this case on June 17, 2008. (Doc. 8) Therein, plaintiff contends that this cause is due to be remanded because the removing defendants have failed to carry their burden of establishing by a preponderance of the evidence the amount in controversy requirement and also because the Guidant defendants have failed to demonstrate that defendants Cardiology Associates of Mobile, Inc., Dr. Stephanie Grosz, Dr. Scott Kirby, and Claude Passeau were fraudulently joined for purposes of defeating federal jurisdiction. (*See id.*)

6.     Defendants Grosz, Kirby and Cardiology Associates of Mobile, Inc. filed their own motion to remand on June 18, 2008. (Doc. 13)

Come now the Defendants . . . and move the Court for an order remanding this cause to the Circuit Court of Mobile County, Alabama, on the grounds that (a) there is no diversity jurisdiction pursuant to 28 U.S.C. § 1332 and therefore the action cannot be removed pursuant to 28 U.S.C. § 1441, (b) there was no notice to or consent by these Defendants to the removal, and (c) this improvident removal is an attempt to have

this case transferred to Minnesota in Multi-District Litigation that would likely take these Defendants years and an untold amount of money to be extricated. In the alternative, these Defendants move this Court to sever them from this action and to remand them to the Circuit Court of Mobile County, Alabama.

(*Id.* at 1-2)

7.      In opposition to the motion to remand, the removing defendants have essentially reiterated the positions set forth in the removal petition. (*Compare* Doc. 41 *with* Doc. 1)

## CONCLUSIONS OF LAW

1.      "Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000).  Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1).  However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."

*University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999).

    2.    "[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *see also Triggs v. John Crump Toyota, Inc*., 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted) ("[T]he removing party bears the burden of demonstrating federal jurisdiction."); *Tapscott, supra* ("A removing defendant has the burden of proving the existence of federal jurisdiction."). Therefore, in this case, the burden is on the Guidant defendants to establish complete diversity, that is, the plaintiff is diverse from each defendant, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, to establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott, supra*, 77 F.3d at 1357 ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $50,000 jurisdictional requirement."). More specifically, "the removing defendant[s] must establish the amount in controversy by '[t]he greater weight

11

of the evidence, . . . [a] superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.'" *Lowery, infra*, 483 F.3d at 1209, quoting *Black's Law Dictionary* 1220 (8th ed. 2004).

3.    In order to establish complete diversity of citizenship and the removability of this case, the removing defendants must show that the joinder of the non-diverse parties, Passeau, Grosz, Kirby, and Cardiology Associates of Mobile, Inc., was fraudulent.[3] *Tapscott*, 77 F.3d at 1359 ("An action may nevertheless be removable if the joinder of non-diverse parties is fraudulent."); *see Sellers v. Foremost Ins. Co.*, 924 F.Supp. 1116, 1117 (M.D.Ala. 1996) ("The citizenship of a resident defendant fraudulently joined should not be considered by a court for the purpose of determining diversity jurisdiction."). "The burden of establishing fraudulent joinder is a heavy one." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998); *see Brooks v. Paulk & Cope, Inc.*, 176 F.Supp.2d 1270, 1274 (M.D.Ala. 2001) ("A claim of fraudulent joinder must be supported by clear and convincing evidence."). In

---

[3]    This Court focuses solely upon defendants Grosz, Kirby and Cardiology Associates of Mobile, Inc. in its analysis of the removing defendants' fraudulent joinder arguments inasmuch as the undersigned is convinced that these healthcare defendants were not fraudulently misjoined to defeat federal jurisdiction.

fact, the Eleventh Circuit has recently underscored the holding in *Brooks, supra*, by determining that the removing defendants must prove by clear and convincing evidence their allegations of fraudulent joinder. *See Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006).

      4.    "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287. Joinder has been deemed fraudulent in three situations in the Eleventh Circuit: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident non-diverse defendant; (2) when the plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court; and (3) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Id.* It is clear from the removing parties' pleadings that their contention with respect to the healthcare defendants is that the third fraudulent joinder situation is applicable in this instance. (*See, e.g.,* Doc. 1, at ¶ 26 ("Plaintiff has [] improperly joined the medical negligence claims asserted against the Healthcare Defendants with the product liability claims asserted against the Guidant Defendants."))

5.      "Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" *Tapscott, supra,* 77 F.3d at 1360 (citation and footnote omitted).  The Eleventh Circuit made clear in *Tapscott* that it was not holding that "mere misjoinder is fraudulent joinder," but rather, that egregious misjoinder constitutes fraudulent joinder. *Id.*[4]  Therefore, in considering the propriety of joinder in this case, the

---

[4]      The Eleventh Circuit's failure in *Tapscott* to define "egregious misjoinder" as opposed to mere "misjoinder" has left courts in its wake either struggling to define the term, *see, e.g., Ashworth v. Albers Medical, Inc.*, 395 F.Supp.2d 395, 410 (S.D. W. Va. 2005) ("In *Conk v. Richards & O'Neil, LLP.*, 77 F.Supp.2d 956 (S.D. Ind. 1999), the court defined procedural misjoinder to be: 'a plaintiff's purposeful attempt to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard.'"); *see Walton v. Tower Loan of Mississippi*, 338 F.Supp.2d 691, 695 (N.D. Miss. 2004) ("[T]he governing legal standards regarding the fraudulent misjoinder doctrine are far from clear."); *Bright v. No Cuts, Inc.,* 2003 WL 22434232, at *4 n.21 (E.D. La. 2003) ("While the *Tapscott* [c]ourt was clear that 'mere misjoinder' is not equivalent to fraudulent misjoinder, this aspect of the *Tapscott* holding has engendered confusion among courts and commentators alike."); *In re Bridgestone/Firestone, Inc.,* 260 F.Supp.2d 722, 728 (S.D. Ind. 2003) ("[U]nder *Tapscott*, something more than 'mere misjoinder' of parties may be required to find fraudulent misjoinder. Precisely what the 'something more' is was not clearly established in *Tapscott* and has not been established since."), or rejecting the theory of misjoinder as an inappropriate jurisdictional inquiry, *see, e.g., A. Kraus & Son v. Benjamin Moore & Co.*, 2006 WL 1582193, *5 (E.D. N.Y. 2006) ("What is clear [] is that any finding of egregious misjoinder inevitably clashes with the well-recognized principle that federal courts are courts of limited jurisdiction. . . . And, in the absence of any clear direction from the Supreme Court or Congress, this court is reluctant to extend the jurisdictional confines of the federal courts by wading into the uncharted waters of fraudulent-egregious misjoinder."); *Riddle v. Merck & Co., Inc.*, 2006 WL 1064070, *7 & 8 (S.D. Ill. 2006) ("In the Court's view, whether viable state-law claims have been misjoined-even 'egregiously' misjoined-is a matter to be resolved by a state court. Nothing in the

Court need keep in mind that Rule 20(a)(2) of the Federal Rules of Civil Procedure sets forth the following  requirements for permissive joinder of defendants:  "Persons . . .  may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a).

[T]he rule "is liberally interpreted in favor of joinder." . . .

---

jurisprudence of the Supreme Court of the United States regarding fraudulent joinder suggests that the joinder of non-fraudulent claims under state procedural rules is a question that implicates the subject matter jurisdiction of a federal court. . . . In sum, just as the Court has refused to follow *Tapscott* in the past . . ., the Court will continue to reject the doctrine of fraudulent misjoinder until such time as it is adopted by the United States Supreme Court or the Seventh Circuit Court of Appeals."); *Osborn v. Metropolitan Life Ins. Co.,* 341 F.Supp.2d 1123, 1127 & 1128 (E.D. Cal. 2004) ("My own judgment is that the last thing the federal courts need is more procedural complexity. I thus conclude that the better rule would require Met Life to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court. . . . In sum, because there appears to be no reason to develop a fraudulent misjoinder theory, and because of the uncertainty as to how such a theory should be applied, I respectfully decline to apply it."). To say the least, *Tapscott* has been roundly criticized. 14B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723, at 658 (3d ed. 1998) ("[T]he fraudulent-joinder doctrine and its allied jurisprudence adds a further level of complexity–and additional litigation–to a federal court's decision regarding removal jurisdiction. The complexity is increased if the Eleventh Circuit's admonition that not all procedural misjoinder rises to the level of fraudulent joinder is accepted and because numerous additional decisions will be needed to clarify the distinction. **In many situations this confusion easily could be avoided by having the removing party challenge the misjoinder in state court before seeking removal.**"); *see Bowling v. Kerry, Inc.,* 406 F.Supp.2d 1057, 1061 (E.D. Mo. 2005) ("Federal courts, of course, could easily avoid this confusing standard if a removing party challenged misjoinder in state court before seeking removal.").

> "[T]here is no strict rule for determining what constitutes the same transaction or series of transactions for purposes of Rule 20(a)." Instead, courts look at each case individually to determine whether the claims are logically related, thereby allowing "all reasonably related claims for relief by or against different parties to be tried in a single proceeding."

*Atchison v. Woodmen of the World Ins. Soc'y*, 982 F.Supp. 835, 839 (S.D.Ala. 1997) (internal citations omitted).

6.      "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. . . . In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380 (citations omitted); *see also Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) ("We have explained before that '[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties*.'"); *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to plaintiff and must

resolve any uncertainties about state substantive law in favor of the plaintiff.

. . . The federal court makes these determinations based on the plaintiff's

pleadings at the time of removal; but the court may consider affidavits and

deposition transcripts submitted by the parties."); *Cabalceta v. Standard Fruit*

*Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) ("In addressing the issue of

fraudulent joinder, the district court should resolve all questions of fact and

controlling law in favor of the plaintiff and can consider any submitted

affidavits and/or deposition transcripts.").

   7. In support of their argument that the healthcare defendants have

been fraudulently misjoined, the removing defendants cite this Court to two

decisions by the Multi-District Court in *In re Guidant Corp. Implantable*

*Defibrillators Products Liability Litigation,* MDL 1708. (Doc. 1, at 17) In one

case, *Alexander v. Guidant Corp.,* the MDL court determined that "'[t]he

joinder of the malpractice claim against [the healthcare provider] with the

other product liability claims was inappropriate because the claims do not

involve common questions of law or fact and assert joint, several or alternative

liability arising out of the same transaction, occurrence, or series of

transactions or occurrences.'" (Doc. 1, at 17, quoting *Alexander*) While this

Court cannot disregard these cases, citation to same by the removing

defendants does not end the inquiry or satisfy their heavy burden, given *Tapscott*'s admonition that only egregious misjoinder constitutes fraudulent joinder,[5] the fact that there are other courts which have reached the contrary conclusion in similar cases, *see, e.g., McDowell v. Davol, Inc.,* 2008 WL 2713708 (E.D. Tenn. 2008) (finding failure to warn claims asserted against manufacturer of the Kugel Patch were properly joined with claims against healthcare defendants for failing to exercise due care during the surgery, care, and treatment for implantation on the patch); *Greene v. Novartis Pharmaceuticals Corp.,* 2007 WL 3407429 (M.D. Ga. 2007) (finding no fraudulent misjoinder of defendant against whom was asserted a product liability claim and defendants against whom was asserted a medical malpractice claim), and because it is important for this Court, sitting as it does in diversity, to consider this issue from the perspective of the state courts of Alabama.  It is clear that Ala.R.Civ.P. 20 is similar in all critical respects to its federal counterpart[6] and, therefore, this Court need not resolve any choice-of-

---

[5]        The MDL Court's analysis obviously does not touch on *Tapscott* and, therefore, as hereinafter explained, this Court has no confidence that the MDL Court would reach the conclusion in this case that there was an egregious misjoinder.

[6]        "All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Ala.R.Civ.P. 20(a).

law question. Given that similarity, however, the undersigned would be remiss if he failed to consider whether Alabama courts require the severance of medical negligence claims asserted against healthcare defendants from product liability claims asserted against manufacturers of medical devices.

8.    A search of Alabama law reveals that Alabama courts take the contrary position and allow such claims to be brought together in the same complaint. *See, e.g., Ex parte Pfizer, Inc.,* 746 So.2d 960, 961 & 964 (Ala. 1999) ("Two defendants, Pfizer, Inc., and Valleylab, Inc. . . . have petitioned for a writ of mandamus directing the Circuit Court of Escambia County to vacate two rulings denying discovery sought by Valleylab in a medical-malpractice/ products-liability case pending in that court. . . . Pfizer, Valleylab, Dr. Thomas, and Atmore Community Hospital are all defendants in M.B.'s medical-malpractice/products-liability action."); *Ex parte St. Vincent's Hosp.,* 652 So.2d 225, 226 (Ala. 1994) ("Zeneca, Inc. (formerly Stuart Pharmaceuticals) and St. Vincent's are codefendants in a medical malpractice/products liability action."); *McGee v. Corometrics Medical Systems, Inc.,* 487 So.2d 886, 887 (Ala. 1986) ("This case combined claims of medical malpractice against several defendants with a products liability claim against Corometrics Medical Systems, Inc."). Certainly, nothing in the

Alabama trial court's denial of the healthcare defendants' motion to dismiss can be taken as a signal that the Alabama court would sever the medical malpractice claims asserted against those defendants from the product liability claims asserted against the removing defendants; if anything, the contrary implication can be taken from the denial of the motion to dismiss. Moreover, in light of the denial of the healthcare defendants' motion to dismiss just days prior to removal, the question of why the Guidant defendants chose not to challenge misjoinder in state court is begged. *See* 14B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723, at 658 (3d ed. 1998) ("[T]he fraudulent-joinder doctrine and its allied jurisprudence adds a further level of complexity–and additional litigation–to a federal court's decision regarding removal jurisdiction. The complexity is increased if the Eleventh Circuit's admonition that not all procedural misjoinder rises to the level of fraudulent joinder is accepted and because numerous additional decisions will be needed to clarify the distinction. **In many situations this confusion easily could be avoided by having the removing party challenge the misjoinder in state court before seeking removal.**").

9.     What the undersigned takes from the foregoing is that the Multi-District Court would not hold in this case, as it has in other cases before them,

that the joinder of the malpractice claims against the healthcare providers with the product liability claims was inappropriate. This conclusion is reached because a similar holding by the Multi-District Court in this case would be contrary not only with *Tapscott's* requirement of an egregious misjoinder but also with the clear direction given by the Supreme Court of Alabama allowing litigants to combine medical malpractice claims with product liability claims. Finally, under *Atchison, supra,* the undersigned finds that the medical malpractice claims asserted against the healthcare providers are logically related to the product liability claims asserted against the Guidant and Medtronic defendants. This is because the pivotal question in this case will be who, if anyone, is responsible for plaintiff's death as a result of complications arising from the laser removal of the ICD and leads: are the responsible parties the manufacturers of the ICD and leads which were defective and/or malfunctioned, or are the responsible parties the healthcare defendants for malpractice in attempting to perform a laser extraction of the ICD and leads. Accordingly, the undersigned recommends that the Court find that plaintiff's claims against the diverse and non-diverse defendants arise out of the same transaction or occurrence and were, therefore, appropriately joined.

10. The Guidant defendants, as the removing parties, have failed to

satisfy their heavy burden of establishing that there exists fraudulent misjoinder in this case. Accordingly, this Court cannot disregard the citizenship of the healthcare defendants for purposes of diversity of citizenship and because complete diversity does not exist this case need be remanded to the Circuit Court of Mobile County, Alabama from whence it came. *See Crowe, supra,* 113 F.3d at 1538 ("This consequence makes sense given the law that 'absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute h[er] own suit in h[er] own way to a final determination.'").

11.     In addition to failing to carry their heavy burden of establishing fraudulent misjoinder, the removing defendants have also failed to establish by a preponderance of the evidence that the amount in controversy in this case more likely than not exceeds the $75,000 jurisdictional requirement. The undersigned is in agreement with the plaintiff that this Court's analysis of this issue is necessarily informed by the Eleventh Circuit's recent decision in *Lowery v. Alabama Power Co.,* 483 F.3d 1184 (2007), *cert. denied sub nom. Hanna Steel Corp. v. Lowery*, ___ U.S. ___, 128 S.Ct. 2877, ___ L.Ed.2d ___ (2008).

> [W]e conclude that the removal-remand scheme set forth in 28
> U.S.C. §§ 1446(b) and 1447(c) requires that a court review the

propriety of removal on the basis of the removing documents. If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. If not, the court must remand. Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate.

.   .   .

[U]nder § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff-be it the initial complaint or a later received paper-and determines whether that document and the notice of removal unambiguously establish federal jurisdiction. This inquiry is at the heart of a case, such as the one before us, in which the plaintiffs challenge removal by filing a timely motion to remand under § 1447(c). In assessing whether removal was proper in such a case, the district court has before it only the limited universe of evidence available when the motion to remand is filed-i.e., the notice of removal and accompanying documents. If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings. The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars.

.   .   .

Though the defendant in a diversity case, unlike the plaintiff, may have no actual knowledge of the value of the claims, the defendant is not excused from the duty to show by fact, and not mere conclusory allegation, that federal jurisdiction exists. Indeed, the defendant, by removing the action, has represented to the court that the case belongs before it. Having made this representation, the defendant is no less subject to Rule 11 than a plaintiff who files a claim originally. Thus, a defendant that

> files a notice of removal prior to receiving clear evidence that
> the action satisfies the jurisdictional requirements, and then later
> faces a motion to remand, is in the same position as a plaintiff
> in an original action facing a motion to dismiss.

*Id.* at 1211, 1213-1215 & 1217 (internal citations and footnotes omitted).

12.     In accordance with *Lowery*, therefore, this Court looks solely to plaintiff's complaint and the notice of removal to assess the propriety of removal. The undersigned quickly discerns that the jurisdictional amount of $75,000 is nowhere clearly stated on the face of the complaint. Moreover, that amount is not clearly deducible from the complaint or the removal petition. The removing defendants appear to make a two-pronged argument with respect to why this Court should find that the jurisdictional amount is readily deducible from the complaint. In the removal petition and in response to the plaintiff's motion to remand, the Guidant defendants cite to cases wherein some federal courts found allegations claiming damages for injuries less serious than death, yet similar to the severe allegations in this case, satisfied the $75,000 requirement (Doc. 1, at ¶ 40) and to Alabama cases which have awarded damages in excess of $75,000 in product liability cases (Doc. 1, at ¶ 42). As *Lowery* makes clear, however, such

> "evidence" . . . fails to support the defendants' contention that
> the district court had jurisdiction over this action. First, we note
> that this evidence regarding the value of other tort claims was

not received from the plaintiffs, but rather was gathered from outside sources. As such, the evidence is not of the sort contemplated by § 1446(b). Even if the defendants had received the evidence of other suits from the plaintiffs, we question whether such general evidence is ever of much use in establishing the value of claims in any one particular suit. Looking only to this evidence and the complaint, the facts regarding other cases tell us nothing about the value of the claims in this lawsuit. Even were we to look to evidence beyond that contained within the notice of removal, in the present dispute-with a record bereft of detail-we cannot possibly ascertain how similar the current action is to those the defendants cite.

483 F.3d at 1220-1221. Thus, the Alabama product liability cases cited by the removing defendants are due to be rejected, *Siniard v. Ford Motor Co.,* 554 F.Supp.2d 1276, 2008 WL 2132078, *1 & *3 (M.D. Ala. 2008) ("This is a product liability case arising out of a motor vehicle accident in Alabama on April 5, 2006, which claimed the life of a Tennessee resident citizen named Deborah S. Siniard. . . . Ford acknowledged that the Complaint does not contain a specific damage request, but noted that Plaintiff sought compensatory and punitive damages for the wrongful death of Deborah Siniard. As evidence that the claim in this case necessarily exceeded $75,000, Ford asserted that other Alabama courts have routinely entered wrongful death verdicts in excess of $75,000 in product liability claims. In support of this proposition, Ford listed numerous cases from various courts which resulted in

plaintiffs' verdicts in wrongful death cases each of which exceeded $75,000. . . . While this Court agrees that the precepts set forth in *Lowery* require the remand of this case which was removed on nothing more than speculation about the amount in controversy, the Court cannot agree that it has the option of ignoring *Lowery* until after the mandate issues or the Supreme Court addresses that case."), as are the federal cases since they were decided well before *Lowery*, *see Carswell v. Sears, Roebuck & Co.*, 2007 WL 1697003, *1 (M.D. Ala. 2007) ("Prior to *Lowery*, Alabama personal injury cases and wrongful death cases with diversity of citizenship but no *ad damnum* were routinely removed to federal court and often kept there by the defendant asserting the existence of more than $75,000 in controversy and citing jury awards in excess of that amount in similar Alabama cases. In contrast to the former practice, *Lowery* now requires that the documents before the court on removal 'unambiguously establish federal jurisdiction.' District courts in this circuit are no longer able to 'speculate in an attempt to make up for the notice's failings,' nor are courts able to consider 'evidence regarding the value of other tort claims.'"). The undersigned's rejection of the "evidence" supplied by the removing defendants necessitates a finding by this Court that the removing defendants have failed to establish by a preponderance of the

26

evidence that the amount in controversy in this case more likely than not exceeds $75,000, exclusive of interest and costs.

## **CONCLUSION**

The Guidant defendants have failed to carry their heavy burden of showing an egregious misjoinder of the healthcare defendants so as to constitute fraudulent joinder. In addition, the removing defendants have not established by a preponderance of the evidence that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. Accordingly, the undersigned **RECOMMENDS** that the pending motions to remand this case to the Circuit Court of Mobile County, Alabama (Docs. 8 & 13) be **GRANTED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation

of the Magistrate Judge.

**DONE** this the 31st day of July, 2008.

_____s/William E. Cassady_____
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

 s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE